ANGELO CRISCI, PROSECUTOR, v. THE BOARD OF COM-
MISSIONERS OF RARITAN, RESPONDENT.

Argued October 6, 1937—Decided October 21, 1937.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *Chiaravalli & Fioravanti* (*Edward
Sachar,* of counsel).

For the respondent, *John Macko* (*Winfield S. Angleman,*
of counsel; *John T. Trimble,* of the New York bar, on the
brief).

The opinion of the court was delivered by

PERSKIE, J.   Did the board of commissioners of Raritan
have authority to enact the challenged ordinances relating to
its sewage and garbage disposal?   We think so.

Generally stated, the stipulated facts disclose that one of
the ordinances in question, passed under date of April 9th,
1937, authorizes the construction of a garbage incineration
plant.   The other ordinance, passed April 26th, 1937, pro-
vides for the improvement of the sanitary sewer system of
Raritan by means of an extension of the existing system
plus the construction of a sewage treatment plant, a pumping
station and an intercepting sewer.   Both enactments addi-
tionally provide for the acquisition of the necessary interests
in land, and for bond issues in order to raise the required

money. The projects are further financed by a grant from the federal emergency administration of public works of the United States of America.

The prosecutor seeks to set aside each ordinance on the grounds that the town of Raritan was incorporated for special and limited purposes only; that the challenged ordinances cannot be brought within these purposes; and, therefore, the board of commissioners had no authority to adopt the aforesaid ordinances.

In order to understand more clearly the problem before us, it becomes necessary to outline the history and development of the governmental affairs of Raritan. The board of commissioners, the elective body answerable for the passage of the challenged ordinances, was created by *Pamph. L.* 1868, *ch.* 333, *p.* 776. Further powers were conferred upon this body by two supplements to the original act. *Pamph. L.* 1870, *ch.* 282, *p.* 638, and *Pamph. L.* 1875, *ch.* 409, *p.* 607. The geographical scope of the board's authority was determined by legislation in 1927 which fixed the boundary lines of the town of Raritan. *Pamph. L.* 1927, *ch.* 62, *p.* 117. The conduct of the administrative and governmental functions of the town is vested in this board which has for many years controlled, *inter alia*, the surface drainage and storm sewers of the town. The present sewage system, by these ordinances sought to be improved, began in 1896 pursuant to an election of the inhabitants of the town who, by that election adopted the provisions of *Pamph. L.* 1890, *ch.* 195, *p.* 310. Ordinances creating and concerning the present system were passed on October 7th, 1896, November 1st, 1897, May 12th, 1890 (probably May 12th, 1898, is meant), June 14th, 1898, August 6th, 1917, and June 20th, 1928. None of these ordinances, so far as is made to appear, has ever been questioned. The present sewage system was financed partly by general taxation, partly by special assessments, and partly by bond issues pursuant to *Pamph. L.* 1916, *ch.* 252, *p.* 525, as amended and supplemented.

On March 17th, 1930, the state department of health ordered the town of Raritan to cease polluting the Raritan

river by discharging sewage therein. On April 13th, 1937, another order from the same body directed the construction of the proposed sewage plant. The ordinance of April 26th, 1937, now under attack, is the result of the compliance with this order. The plan as outlined in the ordinance has been approved by the state board of health, and, as hereinbefore observed, a federal grant has been received to help finance the undertaking. As a matter of fact, the projects contemplated under the ordinances are "now in process of construction;" respondent has received $39,000 on account of the federal grant, and has issued and sold $40,500 of bond anticipation notes which are to be retired and paid upon the issuance of the permanent bonds authorized by the ordinances.

Passing over the question of laches (it is not raised), we thus approach the meritorious issues here involved. Was there any authority to enact these ordinances one of which complies with the mandate of the state board of health, and the other of which may also be classified as a health measure? Is Raritan a separate municipal entity capable of acting in this respect for itself, or must Raritan, as is contended by prosecutor, await action by the township committee of the township of Bridgewater which alone, according to prosecutor, has the authority to enact these ordinances? This latter contention is made to rest upon the fact that originally, and to a limited extent even now, for the purpose of collecting taxes, there is an interrelation between the town of Raritan and the township of Bridgewater. For it seems that prior to the passage of the Budget act of 1917 (*Pamph. L.* 1917, *ch.* 192, *pp.* 548 *et seq.; Pamph. L.* 1936, *ch.* 211, *pp.* 526 *et seq.*), the board of commissioners of Raritan passed annual ordinances setting forth the anticipated revenues and expenditures of the town, and determined the amount of money to be raised by local taxation. This amount was, and still is, certified to the township of Bridgewater, which assesses and collects the taxes necessary, and turns over the money so collected to the treasurer of Raritan, by him to be expended in accordance with the budgetary provisions. Bridgewater also collects the state and county taxes, and likewise pays over to

Raritan the proper proportion of the road tax. Since the passage of the Budget act, *supra,* Raritan has issued tax notes pursuant to the act, all of which have been paid and retired. Apart from this interrelation Raritan acts by virtue of its own powers. For example, the stipulation discloses that the town of Raritan has for many years exercised police powers within its territorial limits; it has controlled and supervised the construction and maintenance of streets, sidewalks, curbs, and lighting; it has erected a municipal building; it has collected and disposed of garbage, it has adopted a municipal budget under *Pamph. L.* 1917, *supra,* and *Pamph. L.* 1936, *supra;* its books and accounts have been audited by the state municipal auditor; it has adopted other ordinances relating to public health (June 4th, 1895); it has qualified as a "town" within *Pamph. L.* 1926, *ch.* 144, *pp.* 219, 220, so that it may license buses; and it has qualified as a "town" under *Pamph. L.* 1933, *ch.* 436, *pp.* 1180, 1182, so that it may control the sale of alcoholic beverages. If Raritan may do all these things, surely in all applicable reason, logic and justice, it has the authority to enact the ordinances in the case at bar.

We do not, however, choose to rest our decision merely upon the implied authority as herein set forth. For we are firmly of the opinion that the board of commissioners of Raritan had express authority to enact the ordinances. Our legislature has continually and consistently classified Raritan as a town. See *Pamph. L.* 1868, *supra; Pamph. L.* 1870, *supra; Pamph. L.* 1875, *supra,* and *Pamph. L.* 1927, *supra.* That classification is conclusive and binding upon us. *Hermann* v. *Guttenberg,* 63 *N. J. L.* 616; 44 *Atl. Rep.* 758 (*Court of Errors and Appeals*); *Bellis* v. *Flemington,* 69 *N. J. L.* 349, 352; 55 *Atl. Rep.* 300 (*Court of Errors and Appeals*); *Peck* v. *New Barbadoes,* 12 *N. J. Mis. R.* 508; 172 *Atl. Rep.* 743; *affirmed,* 114 *N. J. L.* 118; 176 *Atl. Rep.* 317. Having determined that Raritan is a town, we next consider whether, as such, it comes within the provisions of the Home Rule act. *Pamph. L.* 1917, *ch.* 152, *pp.* 319 *et seq.* We think that it does. For that act provides in article 1,

page 319, that: "1. The term 'municipality' * * * where used in this act, shall be construed to mean * * * 'town' * * * and any municipality governed by a board of commissioners, or improvement commission." The same act further provides in article XIV, section 2, page 357, that: "2. Every municipality shall have power to make * * * ordinances * * * as they may deem necessary and proper for the good government, order, protection of persons and property, and for the preservation of the public health and safety * * * as may be necessary to carry into effect the powers and duties conferred and imposed by this act or by any law of this state." That both ordinances are in the interest of public health is beyond cavil.

The financing of the projects is not open to attack. Prosecutor concedes that the formal, procedural statutory requirements of *Pamph. L.* 1935, *ch.* 77, *pp.* 186 *et seq.*, have been observed.

In fine, we conclude that since the enactments were authorized, and the statute with regard to financing fully observed, the ordinances are valid in all respects.

Accordingly the writ of *cerliorari* is discharged, with costs.